### ALLOWANCE OF EXPENSES TO SHERIFFS.

Circuit Court of Mahoning County.

STATE, EX REL FRANK L. DENORMANDIE, v. COMMISSIONERS OF MAHONING COUNTY.

Decided, October Term, 1907.

*Construction of 98 O. L., 96, Providing Additional Compensation for Maintaining Horses and Vehicles.*

In Section 1296-29 (98 O. L., 96), which makes an allowance to sheriffs for "all expense of maintaining horses and vehicles necessary to the proper administration of the duties of his office," the word "maintaining" is used in its ordinary meaning, and only expenses incurred in supporting, sustaining and supplying horses with the neccessaries of life and in keeping them and their vehicles in good condition, can be allowed; it does not mean that a sheriff may purchase at the county expense the necessary horses and vehicles.

LAUBIE, J.; BURROWS, J., and COOK, J., concur.

The relator, sheriff of this county, asks this court to issue a writ of mandamus to compel the commissioners to approve his bills of expense in purchasing two buggies and a double set of harness alleged to be necessary in the performance of the duties of his office, and to pay the same out of the county funds; claiming that they are required to do so by the provisions of act 98 O. L., 89, 96, Section 19; Revised Statutes, 126-29.

That section provides that—

"The county commissioners shall, in addition to the compensation and salary herein provided, make allowances quarterly to every sheriff for keeping and feeding prisoners under Section 1235 of the Revised Statutes, and shall allow his actual and necessary expenses incurred or expended in pursuing or transporting persons accused or convicted of crimes and offenses,

\* \* \* and all expense of maintaining horses and vehicles necessary to the proper administration of the duties of his office. Every sheriff shall file under oath with the quarterly report herein provided for, a full, accurate and itemized account of all his actual and necessary expenses, mentioned in this section, before the same shall be allowed by the county commissioners.''

The whole question depends upon the construction of the words ''all expense of maintaining,'' as used in this section; and counsel for the relator contends that they mean, and should be construed to mean, all money expended in the purchase of such horses and vehicles.

For this construction he relies largely upon the opinion of Attorney-General Ellis rendered upon this question, and published in 4 O. L. R., 669, which is as follows:

''In my opinion the word 'maintaining' as used in this section should be so construed as to authorize the county commissioners to furnish at the county expense the necessary horses and vehicles for the use of the sheriff in the discharge of his duties, or, if the sheriff owns a sufficient number of horses and vehicles, to allow the expense of maintaining them.''

We do not quarrel with the idea that such word *should* be so construed, if possible, at least in some instances, as a sheriff's compensation now, by the statute is made to depend upon the population of his county; but that is not the question before the court. The question here is, can such word legally be so construed—legally bear such a construction in determining the sense in which the Legislature used and intended it?

As we view it, there is nothing in the section which indicates an intention on the part of the Legislature in the use of the word ''maintaining,'' of using it in, or giving to it, any other than its ordinary meaning. On the contrary every word in the section indicates otherwise.

There is no provision in it for the allowance of expenses in the purchase of any articles by name, but feed; and all other intended articles can be ascertained only by implication. Public officers can be allowed only such compensation, or fees, as are provided for in express terms, or by necessary implication from the terms used, and the words ''expense of maintaining,'' as applied to horses and vehicles, can not, by implication, include, or refer to, the expense of their purchase. If the Legislature

intended to have county commissioners supply sheriffs with horses, vehicles and harness, or to allow them the expense necessarily incurred in their purchase, it certainly would have so provided in unambiguous terms.   Simple words only were needed to make such a provision.

What, then, is the definition—the ordinary meaning—of the word "maintaining," especially when applied to animals and vehicles?

All lexicographers define maintenance as "maintaining; supporting; upholding; keeping up; sustenance; supply of the necessaries of life; subsistence;" and the word maintain, "to hold or keep up in any particular state or condition; to support; to sustain; to keep up."   So that the meaning of the word "maintaining" as used in this sectiion in reference to horses and vehicles, means supporting; sustaining; keeping up; supplying with the necessaries of life; and the Legislature therefore in this provision only meant and intended that sheriffs should be allowed the necessary expenses incurred in supporting, sustaining and supplying their horses with the necessaries of life, and in keeping their vehicles in good condition, and not in the purchase of them.

The opinion of the Attorney-General is peculiar, in that it seems to put a double and inconsistent meaning to the word "maintaining": first, that it should be construed to mean that the commissioners should furnish the necessary horses and vehicles; and second, but if the sheriff owns a sufficient number of horses and vehicles the commissioners should only pay the expenses of maintaining them.   So that if two horses were necessary to the discharge of the duties of his office, and the sheriff bought two for such purpose, he could not be allowed the expenses of the purchase, under such construction, if he then owned two horses.

We are not able to see how such a double construction can be placed upon the word in question as used in this section.

As we view the question, we can not grant the relief asked for and the demurrer is sustained and the proceeding is dismissed at the costs of the relator.

*E. H. Moore,* for plaintiff.

*W. R. Graham,* Prosecuting Attorney, for defendants.

## FORM OF COUNTY COMMISSIONERS' ANNUAL REPORT.

Circuit Court of Pike County.

STATE, EX REL THE NEWS PUBLISHING COMPANY, v. THE BOARD
OF COUNTY COMMISSIONERS OF PIKE COUNTY, OHIO;
AND STATE, EX REL J. W. JOHNSON, v. SAME.

Decided, January, 1908.

*County Commissioners—Annual Reports of—Construction of the Phrase
"Itemized as to Amount"—Turnpike Directors' Reports—Mandamus
—Sections 917 and 4898.*

The provision of Section 917, as amended, requiring county commissioners to file an annual report "itemized as to amount," does not necessitate the statement of expenditures with the explicitness of an account, but permits the entering of itemized bills as one transaction, and payments to the same person for a single purpose as one item without separation of dates and amounts.

Relators filed their separate petitions in the Circuit Court of Pike County, Ohio, alleging that the board of commissioners of Pike county had failed and refused to file a detailed report of their financial transactions for the year ending August 31, 1907, itemized as to amount, for what purpose and to whom paid, as they are required to do by statute; that the report already filed by them was so condensed as to defeat the object of the statute requiring such report.

The commissioners answered, setting up four defenses, viz.:

1. That relators had no legal capacity to sue, not being officers, but private individuals.

2. That there was a defect of parties defendant, because the board of turnpike directors were not made parties defendant.

3. A denial of the material allegations of the petitions, consisting of legal conclusions merely.

4. Alleging that they had already fully complied with the law, and had filed the required report, and that in making same

they had followed the form prescribed by the bureau of inspection and supervision of public offices.

To this answer was attached a copy of the report of said commissioners; also a copy of their report as turnpike directors; also a copy of the form prescribed by said bureau of inspection, July 25, 1905.

The case was heard upon demurrer to this answer.

JONES, J.; CHERRINGTON, J., concurs; WALTERS, J., dissents in part in a separate opinion.

The relator seeks a peremtory writ of mandamus to compel the defendant to publish a fuller and more complete report of their financial transactions during the year preceding the third Monday of September, 1907. He states that he is the owner and publisher of a newspaper, and by proper allegations in his petition, establishes his right to publish the report in question.

Defendants answer, the answer containing four defenses. The fourth defense attaches a copy of the report to the pleading.

Without stating specific reasons therefor, the court will content itself by saying that the demurrer to the first, second and third defenses respectively, is sustained.

The fourth defense, having the copy of the report attached, however, is considered upon its merits, the sole question being whether the commissioners have complied with the law in publishing their report.

Objections have been urged by counsel for the relator, because the report has grouped under various heads and sub-heads the amounts, thereby showing for what purpose they were expended. We think that, by this means, the report is a substantial compliance with the statute, and that a reference to such heads and sub-heads will sufficiently show the purpose of the several expenditures. Especial objection is made, for instance, to the items under the sub-heads "allowance to counsel" and "allowance to justices and mayors," etc. The item "allowance" so used, is information to the effect that they were statutory allowances, and more specific terms were not absolutely necessary. Other items appear showing various amounts were paid out

under the head of "insurance." We do not think it neces-
sary that the report show upon what property the insurance
was effected; neither under the head "boarding in county jail,"
do we think it necessary to state explicitly what prisoners were
fed. In such and other similar items the report shows sub-
stantially the purpose of the expenditures, and that is all the
statute requires.

Upon the question, however, of what constitutes "a detailed
report in writing, itemized as to amount, to whom paid, and for
what purpose," the members of this court are not in full accord.
It is contended by counsel for relator that, under a proper con-
struction of Section 917, Revised Statutes, that the amounts
shown to have been paid out must be itemized and that instead
of the aggregate sum allowed and paid out, the report should
show upon its face the several distinct items composing the
aggregate sum. For example under the heading of "stationery
and supplies for county officers," various expenditures appear
showing an aggregate sum paid out to Barrett Bros., for the
use of the probate judge, and others paid out for the use of the
other county officials. It is insisted that the report show the
various items of stationery and supplies; that the statute now
requires this to be done with the explicitness of an account. This
is but one instance of the character of the report. An in-
spection of the report shows, that if these aggregate sums found
throughout were so itemized, the report would be greatly length-
ened.

The majority of the court are unable to concur in this view.
Neither does the strict reading of Section 917, Revised Stat-
utes, nor a proper construction of that section require the
minute itemizing of each bill passed on, allowed and paid out,
when paid to a single person. In the first place Section 917
merely requires a report of the *"financial transactions"* of the
commissioners. Section 850, Revised Statutes, provides for the
keeping of a record by the county commissioners of their pro-
ceedings, which record shall be received as evidence in every
court in the state. By that section the "financial transactions"
mentioned in Section 917, are entered on that journal. And in

the instance mentioned, where the board audits the itemized bill of Barrett Bros., for stationery and supplies furnished the probate judge, and allows the bill in the aggregate, the act is but one "transaction," and the allowance of the aggregate sum is all that is necessary to be placed on its journal.

Again, the strict reading of Section 917, Revised Statutes, does not require the *amount* to be itemized if paid to a single person.    The word "itemized" modifies the word "report," just preceding.    The statute requires the report to be itemized in three particulars—amount, to whom paid, and, for what purpose. In other words the natural reading of this section requires the report to be itemized: first, as to amount paid; second, to whom paid; third, for what purpose.

In construing this statute before its amendment, as to what constitutes a "detailed report," Judge Bradbury, in *State, ex rel,* v. *Commissioners,* 56 Ohio St., p. 646, uses this pregnant language:

"It is, of course, within the power of the General Assembly to require such minuteness as this in the report made by the commissioners, but unless the language chosen by that body imperatively demands such construction, the section should not, in our opinion, be so construed."

Judge Newby, in construction of this feature of the section in Fayette county, held the same view, for he says:

"I do not think this contention well founded, provided the aggregate amount was paid for a single purpose, for the statute goes no farther than to require that the name of the person receiving the money, the amount paid, and the purpose for which paid be stated, and does not require the dates and amounts of several payments to one person for a single purpose to be given, but permits the several payments to be stated in the aggregate, because by such a statement, the public are advised as to the amount paid, the name of the person to whom paid, and the purpose for which paid, and the detail contended for is not necessary to serve any purpose of the statute."

Attached to the commissioners' report is the turnpike directors' report of receipts and expenses made in conformity to Section 4898.

We all agree that the latter section governs the preparation of such turnpike directors' report, and that the particularity of statement required by Section 917, Revised Statutes, does not apply thereto. This section was not amended, as was Section 917, and the construction adopted by the Supreme Court in *State, ex rel,* v. *Commissioners,* 56 Ohio St., 631, applies thereto.

Finding that there has been a substantial compliance with the statutes, the demurrer to the fourth defense will be overruled, the prayer for a peremptory writ of mandamus refused, and the petition dismissed.

*Dougherty & Moore,* for relators.

